IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CHARLES WHITE, #N82894,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 12-cv-75-JPG |
| | ) | |
| **WARDEN RYKER,** | ) | |
| **WARDEN HODGE,** | ) | |
| **DR. PHIL MARTIN,** | ) | |
| **DR. FENOGLIO, STEPHNS,** | ) | |
| **HOVEY, HOMAN,** | ) | |
| **CUMMONS, CUSICK, CLVEY,** | ) | |
| **GOBBLERS, SOYER, HIGGINS,** | ) | |
| **SELLERS, SHEARS, KAISER,** | ) | |
| **DARNOLD, BAKER** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Charles White, an inmate in Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving a 50 year sentence for murder. Plaintiff's claims are now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

The following is an overview of the allegations in Plaintiff's complaint (Doc. 1). Plaintiff is on a self-imposed hunger strike. As a result, he has been fed through a feeding tube since at least July 6, 2010. Defendant Fenoglio (physician) removed this feeding tube on September 23,

1

2010.  However, at the time of removal on September 23, Defendant Fenoglio told Plaintiff that if he did not end his hunger strike, his feeding tube would be changed without medical justification in the future.  Plaintiff did not end his hunger strike and accordingly, his feeding tube began to be changed without medical cause.  Defendant Fenoglio first authorized Plaintiff's tube to be changed twice monthly.  The tube was then changed twice weekly, then once a week, then "periodically every day," until ultimately it was changed after each meal every day for over a year (Doc. 1, p. 2).  Defendant Fenoglio authorized these tube changes to discourage Plaintiff from protesting by hunger strike.  Plaintiff experienced nose and throat bleeds, vomiting, esophageal pain, extremely high blood pressure, and asphyxiation each time his tube was changed.  He also had scar tissue from constant scratching and coughing caused by feeding tube changes.  Plaintiff requested pain relievers for constant throat and esophageal pain, but the medical staff denied his requests.  The medical staff was aware of the serious harm that Plaintiff suffered as a result of the excessive feeding tube changes, yet continued to perform unnecessary changes.

  Defendant Fenoglio released Plaintiff from health care while he was on hunger strike and placed him without medical supervision in a cell that could not be seen on camera.[1]  The room was not sanitized and was full of flies.  While in this cell, Plaintiff was tube fed with dirty utensils and containers, and the nurses used brown water to flush out his tube.  Further, the nurses who changed Plaintiff's feeding tube often did not properly flush his tube or leave water in it to keep it clean and prevent air from entering Plaintiff's stomach during the feeding process; as a result, Plaintiff experienced cramping.  The nurses also did not clean the syringe that was

---

[1] The date on which this occurred appears in the complaint, but is illegible.

connected to Plaintiff's tube prior to his feedings. The syringe was only changed once every five months.

On multiple occasions, the nurses who performed Plaintiff's tube feedings did not provide him with the amount of supplements that Defendant Fenoglio ordered, telling Plaintiff that if he wanted more, he should "eat on his own." As a result of the nurses' failure to provide the correct amount of supplements, Plaintiff experienced weight loss. Defendant Fenoglio, however, knowing that Plaintiff was losing weight, reduced Plaintiff's supplements. Because of the weight loss, Defendant Fenoglio took blood and urine from Plaintiff in spite of Plaintiff's protests and without a court order.

Plaintiff filed grievances in regard to his feeding tube issues. However, the prison staff claimed that they were unable to locate these grievances. The prison staff also failed to appropriately handle Plaintiff's mail, including legal mail. On April 27, 2011, a lieutenant received legal mail from Plaintiff that was to be signed by staff. However, the mail was never retrieved. Another lieutenant told Plaintiff on May 19, 2011 that his mail was not processed outside of the prison. The prison staff has a history of "mail problems" against Plaintiff (Doc. 1). Plaintiff was also denied telephone privileges, though he was eligible for them.

Plaintiff has been in solitary confinement for approximately 15 months without a disciplinary ticket or hearing. Defendant Ryker placed Plaintiff in solitary confinement and deprived him of his necessities (unspecified property items) because of Plaintiff's protest by hunger strike.

Plaintiff seeks to have his complaint merged with a previous complaint that he filed on May 3, 2010 (*White v. Suneja*, Case No. 10-cv-332-JPG-PMF (S.D. Ill. filed May 3, 2010)). He

also seeks compensatory damages.

Plaintiff filed a motion for a preliminary injunction preventing excessive feeding tube changing on April 6, 2012 (Doc. 8). Plaintiff alleges that Defendant Fenoglio authorized the excessive changing of Plaintiff's feeding tube out of retaliation for Plaintiff's protest by hunger strike and the lawsuit that Plaintiff filed against Defendant Fenoglio. Plaintiff suffered mental anguish as a result of his feeding tube being changed after each meal every day. Defendant Hodge placed Plaintiff in segregation with no pending investigation, no disciplinary report, and no adjustment committee hearing for over 15 months. Defendant Hodge also denied Plaintiff unspecified property by keeping Plaintiff in disciplinary status. Defendant Hodge did this in order to discriminate and retaliate against Plaintiff.

Plaintiff filed a motion for preliminary injunction or motion for temporary restraining order preventing excessive feeding tube changing on July 5, 2012 (Doc. 9). In this motion, Plaintiff alleges that Defendant Fenoglio refused to surgically implant Plaintiff's feeding tube, which, if done, would have allowed Plaintiff's tube to go for long periods without being changed. In retaliation for Plaintiff continuing the hunger strike, Plaintiff's tube was changed after breakfast, lunch, and dinner every day from April 23, 2012 through June 28, 2012 (66 days). When Plaintiff's feeding tube was changed, he experienced asphyxiation and damage to the lungs because the tube became stuck in his lungs.

Plaintiff also filed a request for leave to file an amended complaint (Doc. 11) on August 7, 2012. The motion includes over 20 additional Defendants and omits two previously named Defendants. This motion also requests injunctive relief for the ongoing retaliation and curtailment of Plaintiff's food supplements. Plaintiff alleges in this motion that Doctor Shute

(who was not previously named as a Defendant) authorized his feeding tube to be removed after each meal. He also claims that Defendant Fenoglio mandated that Plaintiff's used feeding tubes would be reinserted after removal instead of providing Plaintiff with new tubes upon reinsertion. Defendant Fenoglio refused to give Plaintiff medication for the sore throat that he suffered as a result of his dehydration and only authorized Plaintiff to be fed once every five days. Plaintiff claims that Defendant Hodge is retaliating for Plaintiff's hunger strike and grievance filing.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into seven counts, which differs from Plaintiff's organization of the counts. The parties and the Court will use the Court's designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

At the outset, the Court notes that although Plaintiff's claims within this complaint are similar to those within his previous case (Case No. 10-332-JPG-PMF), they occurred in a different time frame. The claims within this complaint arose nearly two years after those in No. 10-332. Therefore, the Court will not merge the complaints.

**Count 1 – Retaliation**

In a retaliation claim, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.*

**Defendant Fenoglio**

Defendant Fenoglio told Plaintiff that if he did not end his hunger strike, his feeding tube would be changed without medical justification. When Plaintiff did not end his hunger strike, Defendant Fenoglio authorized Plaintiff's feeding tube to be changed as much as three times per day to discourage Plaintiff's hunger strike. Plaintiff has named the suit and the act of retaliation. Accordingly, his retaliation claim against Defendant Fenoglio shall receive further consideration.

**Defendant Ryker**

Defendant Ryker placed Plaintiff in solitary confinement and deprived him of his necessities because of Plaintiff's protest by hunger strike. Again, Plaintiff has named the suit and the act of retaliation. Therefore, his retaliation claim against Defendant Ryker shall receive further consideration.

**Count 2 – Cruel and Unusual Punishment – Feeding Tube Changes**

Plaintiff suffered from nose and throat bleeds, vomiting, esophageal pain, high blood pressure, asphyxiation, scar tissue, scratching, and coughing as a result of his feeding tube being changed excessively. To sustain an Eighth Amendment claim, Plaintiff must ultimately show that Defendants were aware of a serious risk posed by the feeding tube changes, and failed to take steps to mitigate that risk. *See McNiel v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). Since Defendant Fenoglio was Plaintiff's physician during the time that his feeding tube was being changed excessively, it is appears that he was aware of the serious risk to Plaintiff, yet failed to take steps to mitigate that risk. Accordingly, Plaintiff's claim for violation of Eighth Amendment rights against Defendant Fenoglio shall receive further consideration.

**Count 3 – Deliberate Indifference to Medical Needs**

Generally, an inmate's dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).  However, in certain instances, a constitutional claim may lie if a prison official's actions amount to a failure to treat a serious medical condition.  A medical need is "serious" for deliberate indifference purposes where it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).  To state a claim for deliberate indifference to medical care, a detainee must show that (1) he suffered from an objectively serious condition which created a substantial risk of harm, and (2) the defendants were aware of that risk and intentionally disregarded it.  *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010).

    **A. Defendant Fenoglio**

Defendant Fenoglio changed Plaintiff's feeding tube, released him from health care while he was on hunger strike, and placed him without medical supervision in a cell that was full of flies, could not be seen on camera, and was not sanitized.  Defendant Fenoglio also reduced the amount of Plaintiff's supplements while Plaintiff was losing weight.

Mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment.  *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001)

(courts will not takes sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

If Defendant Fenoglio was aware of Plaintiff's weight loss, yet reduced the amount of his food, such action may go beyond a mere disagreement with prescribed treatment, or negligence/malpractice, and rise to the level of deliberate indifference. At this stage, it cannot be determined whether Defendant Fenoglio's actions constituted deliberate indifference to Plaintiff's serious medical needs. Accordingly, Plaintiff's deliberate indifference claim against Defendant Fenoglio will be allowed to proceed.

### B. Unidentified Defendants

Plaintiff alleges that the "medical staff" denied him pain medication and changed his feeding tube with knowledge of the serious harm that he suffered as a result of the changes. Plaintiff also claims that "nurses" failed to properly flush his feeding tube, failed to clean the syringe used in his tube feedings, and refused to provide him with the amount of supplements ordered by Defendant Fenoglio. Plaintiff may have valid claims against the individuals responsible for this conduct. However, until Plaintiff identifies those individuals by name, the matter cannot proceed further. Therefore, the Court will grant Plaintiff leave to amend his complaint in order to identify "medical staff" and "nurses."

**Count 4 – Unreasonable Search and Seizure – Blood and Urine Samples**

Defendant Fenoglio took blood and urine samples from Plaintiff because of Plaintiff's continuous weight loss.

It is a well-established principle that "a 'compelled intrusio[n] into the body for blood to be analyzed' ... must be deemed a Fourth Amendment search." *Skinner v. Railway Labor Execs. Ass'n*, 489 U.S. 602, 616 (1989) (quoting *Schmerber v. California*, 384 U.S. 757, 767-68 (1966)).  The Fourth Amendment mandates, however, that the search be reasonable. *Roe v. Marcotte*, 193 F.3d 72, 77 (2nd Cir. 1999).  What is reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself," and the permissibility of the search is "judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* (internal quotation marks and citations omitted).  The Supreme Court has stated:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

In the present case, the taking of blood and urine samples was a reasonable search because it was conducted in an effort to monitor Plaintiff's health while he was on hunger strike.  Because of Plaintiff's excessive weight loss, Defendant Fenoglio was justified in initiating the intrusion.  Maintaining a prisoner's health is a legitimate governmental interest that outweighs the intrusion on Plaintiff's Fourth Amendment interests caused by taking the blood and urine

samples.  Therefore, Plaintiff's claim for violation of Fourth Amendment rights against Defendant Fenoglio shall be dismissed with prejudice.

**Count 5 - Mail Disruption**

The prison staff has a history of "mail problems," and failed to appropriately handle Plaintiff's mail.

A sporadic disruption of mail service will not violate the constitution.  Although the First Amendment "applies to communications between an inmate and an outsider," a valid claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery.  *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000).  "Allegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded upon the First Amendment."(*citing Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Sizemore v. Wiliford*, 829, F.2d 608, 610 (7th Cir. 1987)).

In the present case, Plaintiff alleges that there is a continuing pattern of denial or delay of mail delivery.  Accordingly, he likely has a valid claim for disruption of mail service.  However, until Plaintiff identifies the individuals responsible for the mail issues by name, the matter cannot proceed further.

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George*, 507 F.3d at 607, *citing* 28 U.S.C. § 1915(b), (g).

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall **SEVER** Count 5 of Plaintiff's complaint into a new case, according to the instructions below.

**Count 6 - Grievance Procedures**

Plaintiff alleges that the prison staff lost his grievances. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Therefore, even if the Court were to accept Plaintiff's contention that the prison staff lost his grievances, such conduct does not establish a constitutional violation. Accordingly, this claim shall be dismissed with prejudice.

**Count 7 - Telephone Privileges**

Plaintiff claims that although he was eligible for telephone privileges, he was denied them. The constitution does not recognize an inmate's liberty interest in telephone privileges, *see Sandin v. Connor*, 515 U.S. 472 (1995), and regulations limiting telephone use by inmates have been sustained routinely as reasonable. *See*, e.g., *Arsberry v. Illinois*, 244 F.3d 558, 564 (7th Cir. 2001); *Pope v. Hightower*, 101 F.3d 1382, 1384-85 (11th Cir. 1996); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994); *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989); *Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir.1988); *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir.1986); *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir.1982) (inmates have no right to

unlimited telephone use). Plaintiff's contention that he was denied telephone privileges does not establish a constitutional violation. Therefore, this claim shall be dismissed with prejudice.

### Defendants Hodge, Martin, Hovey, Homan, Cummins, Cusick, Clvey, Gobblers, Soyer, Higgins, Sellers, Shears, Kaiser, Darnold, Baker

Plaintiff has included these individuals as Defendants in this action, but the operative complaint (Doc. 1) contains no allegations against them. Merely invoking the name of a potential Defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Accordingly, Defendants Hodge, Martin, Hovey, Homan, Cummins, Cusick, Clvey, Gobblers, Soyer, Higgins, Sellers, Shears, Kaiser, Darnold, and Baker will be dismissed from this action without prejudice to their inclusion in a future amended complaint, if appropriate.

### Pending Motions

Plaintiff's motion to amend his complaint (Doc. 11) shall be construed also as a motion for injunctive relief. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's motions for injunctive relief (Docs. 8, 9, and 11) are hereby **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for an evidentiary hearing and issuance of a report and recommendation. The period for filing any objections to Judge Frazier's report and recommendation shall not exceed 7 days from the date of the report. Judge Frazier shall set an evidentiary hearing as soon as practicable, in light of the time necessary to effect service of summons and for receipt of the Defendants' responses to the motions for injunctive relief. Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED** to Judge Frazier.

Plaintiff's motion for leave to amend his complaint (Doc. 11) seeks to add allegations in a piecemeal fashion, and does not comply with local Rule 15.1 (the proposed amended pleading must be submitted at the time the motion to amend is filed).  However, Plaintiff shall be given leave to file a proper amended complaint as outlined below.

**Disposition**

**COUNTS 1, 2,** and **COUNT 3-A** survive threshold review and shall receive further consideration.  **COUNT 5** shall be severed into a new action.

**IT IS HEREBY ORDERED** that **COUNTS 4, 6,** and **7** fail to state a claim upon which relief may be granted and are **DISMISSED** with prejudice.  Defendants **HODGE, MARTIN, HOVEY, HOMAN, CUMMINS, CUSICK, CLVEY, GOBBLERS, SOYER, HIGGINS, SELLERS, SHEARS, KAISER, DARNOLD,** and **BAKER** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed on his claims against the unidentified Defendants in **COUNT 3-B**, Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support a deliberate indifference to medical needs claim and naming those individual Defendants directly responsible for the alleged unconstitutional acts in Count 3-B, within 35 days of the entry of this order (on or before September 17, 2012).  Should the First Amended Complaint not conform to these requirements, it shall be stricken and the claims against the unidentified Defendants in Count 3-B may be dismissed.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1

(7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint.  Thus, the First Amended Complaint must stand on its own, and in addition to claims against the unidentified Defendants in Count 3-B, it must contain the allegations in Counts 1 and 2, and the allegations against Defendant Fenoglio in Count 3-A, which shall receive further review as determined above.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.  Failure to file an amended complaint shall result in a dismissal with prejudice of the claims against the unidentified Defendants in Count 3-B.  Review of Counts 1 and 2, and the claims against Defendant Fenoglio in Count 3-A shall proceed whether or not Plaintiff submits an amended complaint.

**IT IS HEREBY ORDERED** that Plaintiff's mail disruption claims (**COUNT 5**), which are unrelated to the feeding tube claims, are **SEVERED** into a new case.  That new case shall be: Claims against **UNKNOWN DEFENDANT PRISON STAFF** for mail disruption.

The new case **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings.  In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order

(2) The Original Complaint (Doc. 1)

(3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 4)

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the newly-opened case, he must notify the Court in writing within 35 days (on or before September 17, 2012).  Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he will be responsible for an additional filing fee in the new case.  Further, in order for the new case to proceed, Plaintiff will be required to file an amended complaint in that case to

identify the Defendant(s) by name.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **FENOGLIO** and **RYKER** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or  counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the

Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip M. **Frazier** for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Philip M. **Frazier** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral*.

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under §1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed in forma pauperis has been granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: August 13, 2012**

                                       *s/J. Phil Gilbert*
                                       **United States District Judge**